**Exhibit 1**

**Side Letter Between GGC and Gemini**

**CONFIDENTIAL**



December 23, 2020

Dear Genesis Global Capital, LLC:

This side letter agreement (this "Side Letter") is to confirm the following additional terms that have been agreed to by and between Gemini Trust Company, LLC ("Custodian") and Genesis Global Capital, LLC ("Borrower" and together with the Custodian, the "Parties") with respect to the Gemini Earn Program (the "Program"), pursuant to which Borrower will borrow Digital Assets from customers of Custodian under a Master Digital Loan Agreement ("Master Agreement"), a form of which is attached hereto as Exhibit A.

Capitalized terms not expressly defined herein shall have the meanings set forth in the Master Agreement.

This Side Letter

1. During the Program, Borrower shall provide to Custodian via API or other electronic delivery (or other mutually agreed upon delivery method) information consisting of (i) the Digital Assets it will borrow, (ii) the Loan Fees it will pay for each Digital Asset, and (iii) any applicable maximum amounts of Digital Assets for each Loan type (such information, the "<u>Electronic Terms Set</u>").  Borrower shall be obligated to accept all Loans for Digital Assets and Loan types indicated in the Electronic Terms Set up to the maximum amount, but Borrower shall not be obliged to accept terms of a previous <u>Electronic Terms Set</u> after a new <u>Electronic Terms Set</u> has been provided to Lender. Borrower may update the <u>Electronic Terms Set</u> no more than once per month, however Borrower and Custodian may agree to more frequent updates of the Electronic Terms Set.

2. The initial monthly maximum amounts of each Digital Asset that Borrower agrees to borrow from Lenders each month is attached hereto as <u>Exhibit B</u> (with respect to each Digital Asset, the "Monthly Limit").  Borrower may adjust a Monthly Limit upon written notice to Custodian no more than once in any three-month period. A Monthly Limit may be exceeded, provided that in such case Borrower may request, and Custodian shall consider in good faith, an updated Electronic Term Set.

3. For a period of two (2) years from the date of this Side Letter (the "MFN Term"), Borrower shall extend to Lenders (as defined in the Agreement) rates that are substantially similar to other Borrower counterparties participating in any lending activity similar to that contemplated by the Agreement, subject to the limitations on rate changes

**CONFIDENTIAL**

and notice period set forth in the Agreement. The MFN Term shall not apply to any similar lending activity offered by an affiliate of Borrower.

4. **Covenants**

   (a) *Ongoing Financial and Control Diligence.* Promptly upon (and in any event within seven (7) Business Days after) demand by Custodian, but no more than once per quarter, Borrower shall furnish Custodian with (i) Borrower's most recent audited annual financial statements; (ii) Borrower's most recent quarterly Statement of Financial Condition, which may be unaudited, (iii) the opportunity to review and test controls related to Borrower's collateral management process for its own loan portfolio or, alternatively, a report mutually agreed by Borrower and Custodian which addresses such controls, (iv) projected Monthly Limits for the next eight (8) quarterly periods, and (v) any other financial statements or reports mutually agreed upon by Borrower and Custodian from time to time. Borrower's quarterly financial statements shall be made available no later than forty-five (45) days after the end of the applicable quarterly period.

   (b) *Multiple Lenders.* If Custodian acts for more than one Lender in the Program, Custodian and Borrower agree to treat Loans under the Agreement as transactions entered into on behalf of separate principals. However, Custodian shall be responsible for recording the portion of each Loan allocable to the account of each Lender for which it is acting.

   (c) *Non-solicit.* For a period commencing on the Effective Date and ending twelve (12) months after the Termination of this Agreement, Borrower and its affiliates shall not knowingly solicit, induce or encourage any Lender to make loan, provide deposits, or otherwise participate in any service competitive to Custodian offered by Borrower or any of its affiliates. Nothing in this subsection (c) shall restrict Borrower's ability to advertise or promote its activities in the ordinary course of business, or to enter into any lending, borrowing or other transactional relationship with any Lender as a result of such advertising, promotion or ordinary course of business.

   (d) *IRS Forms.* Custodian shall ensure that Lenders receive the relevant Internal Revenue Service form reporting the interest paid to them by Borrower.

   (e) *AML Reliance.* Custodian shall maintain an anti-money laundering program in accordance with the requirements set forth in Exhibit C hereto.

5. Borrower must provide Custodian at least six (6) months advance written notice of its intent to terminate the Program within the first year after date of this Side Letter.

6. This Side Letter shall terminate upon termination of all Master Agreements. This Side Letter shall be governed according to the laws of the State of New York and according to the arbitration procedures set forth in Section XII of the Master Agreement.

**CONFIDENTIAL**

The Parties agree to treat this Side Letter as confidential, and not to disclose this Side Letter to any third party other than on a need-to-know basis to its employees or authorized representatives.

| | | | |
|---|---|---|---|
| **CUSTODIAN:** | | **BORROWER:** | |
| Signature: *Cameron Winklevoss* | | Signature: *Kristopher Johnson* | |
| Name: | Cameron Winklevoss | Name: | |
| Title: | President | Title: | |

EXHIBIT A

[Form Master Digital Asset Loan Agreement]

## EXHIBIT B

| Asset | Capacity in a month ($ notional) |
|---|---|
| Bitcoin | $1,000,000,000 |
| Ether | $500,000,000 |
| Dai | $100,000,000 |
| Filecoin | $100,000,000 |
| Bitcoin Cash | $100,000,000 |
| Litecoin | $50,000,000 |
| Zcash | $40,000,000 |
| Chainlink | $40,000,000 |
| Pax Gold | $25,000,000 |
| Orchid | $20,000,000 |
| Yearn.finance | $20,000,000 |
| Basic Attention Token | $10,000,000 |
| Compound | $10,000,000 |
| Maker | $10,000,000 |
| UNI | $10,000,000 |
| Aave | $10,000,000 |
| 0x | $5,000,000 |
| Curve | $5,000,000 |
| Decentraland | $5,000,000 |
| Kyber Network | $5,000,000 |
| Ren | $3,000,000 |
| Storj | $3,000,000 |
| Synthetix | $3,000,000 |
| Uma | $3,000,000 |
| Amp | $1,000,000 |
| Balancer | $1,000,000 |

**CONFIDENTIAL**

EXHIBIT C

Anti-Money Laundering Program

1. Custodian represents that it is a digital asset exchange and a limited purpose trust company headquartered in New York City and regulated by the New York State Department of Financial Services. Gemini is also registered with the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") as a money services business and maintains money transmitter licenses (or the statutory equivalent) in such states as required by law.

2. Custodian represents that it has policies, procedures and internal controls in place that are reasonably designed to comply with applicable anti-money laundering ("AML") laws rules and regulations, which include, at a minimum:
    a. Perform the specified requirements of Customer Identification Program ("CIP") in a manner consistent with Section 326 of the USA PATRIOT Act and applicable implementing regulations;
    b. Designate an individual responsible for day-to-day AML compliance operations;
    c. Provide ongoing AML training for relevant employees;
    d. Perform independent reviews to ensure the effectiveness of the AML compliance program; and
    e. Monitor and report suspicious activity to appropriate law enforcement or regulatory authorities

3. Custodian also represents that it has implemented policies, procedures and internal controls that are designed to comply with the regulations and economic sanctions programs administered by the U.S. Treasury's Office of Foreign Assets Control ("OFAC")

4. Custodian shall, on an annual basis upon Borrower's written request, represent that Custodian remains in compliance with applicable state and federal AML laws and implementing regulations, and that Custodian's representations regarding the CIP remain accurate.

5. Upon Borrower's written request, Custodian shall provide Borrower with the result of the most recent Independent Review of its AML program.

6. Custoian will cooperate in good faith with a court order or an inquiry from a competent legal, regulatory or law enforcement authority, including, if requested by such competent authority and subject to reasonable confidentiality protections, disclosure of records relating to performance of the CIP.