Sean A. O'Neal
Luke A. Barefoot
Jane VanLare
Andrew Weaver
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Genesis Global Holdco, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 23-10063 (SHL) |
| GEMINI TRUST COMPANY, LLC, for itself and as agent on behalf of the Gemini Lenders, <br><br> Plaintiff, <br><br> v. <br><br> GENESIS GLOBAL CAPITAL, LLC, GENESIS GLOBAL HOLDCO, LLC, and GENESIS ASIA PACIFIC PTE. LTD., <br><br> Defendants. | Adv. Pro. No. 23-01192 (SHL) |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF**
**GENESIS GLOBAL CAPITAL, LLC, TO THE COMPLAINT**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (as applicable), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); Genesis Asia Pacific Pte. Ltd. (2164R). For the purpose of these Chapter 11 Cases, the service address for the Debtors is 175 Greenwich Street, 38th Floor, New York, NY 10007.

Genesis Global Capital, LLC ("GGC")[2] submits this answer (the "Answer") to the complaint (ECF No. 1) (the "Complaint" and the proceeding initiated thereby, the "Adversary Proceeding") filed on October 27, 2023, by plaintiff Gemini Trust Company, LLC ("Gemini" or "Plaintiff"), for itself and as agent on behalf of the Earn Users.[3]  To the extent any allegations in the Complaint are not expressly admitted, they are denied; including, but not limited to, any allegations contained in the section headings in the Complaint.   Any averment that GGC lacks information or knowledge sufficient to form a belief as to the truth of an allegation shall have the effect of a denial.

## NATURE OF THE ACTION

1.    GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the body of paragraph 1 and therefore denies such allegations, except to admit that Gemini and GGC entered into the Security Agreement on August 15, 2022, which Security Agreement was amended on November 7, 2022 and on November 10, 2022, and refers the Court to the Security Agreement and respective amendments (attached as exhibits 1, 3, and 4 to the Complaint) for a full and complete statement of their contents.  To the extent that footnote 1 of the Complaint asserts factual allegations concerning Gemini's alleged risk management efforts, GGC lacks information or knowledge sufficient to form a belief as to the truth of such allegations.  The remainder of footnote 1 of the Complaint contains legal conclusions to which no response is required, and GGC refers the Court to complaints filed in *Gemini Tr. Co., LLC v. Dig. Currency Grp.*, No. 1:23-cv-06864 (S.D.N.Y.) and *People v. Gemini Tr. Co., LLC*, Index No. 452784/2023 (N.Y. Sup. Ct.) for a full and complete statement of their contents.

---

[2]    GGC, Genesis Global Holdco, LLC ("Holdco") and Genesis Asia Pacific Pte. LTD. ("GAP") are collectively the "Debtors" in the above-captioned chapter 11 cases.

[3]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Complaint.

2.     GGC denies the allegations in Paragraph 2, except that GGC (i) admits that it has challenged the validity of Gemini's foreclosure on the 30,905,782 shares of GBTC, and (ii) admits that it has not delivered the Additional GBTC Shares.

3.     GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the body of paragraph 3 regarding the Gemini's intent in bringing the instant action and therefore denies such allegations.  Footnote 2 of the Complaint contains a legal conclusion to which no response is required, except that GGC (i) admits that Plaintiff asserted claims numbered 356, 369, and 400 on behalf of the Earn Users (the "Master Claim"), and refers the Court to the Master Claim for a full and complete statement of its contents and (ii) denies that the Master Claim put all parties on notice of the claims asserted in the Complaint.

4.     GGC denies the allegations in paragraph 4, except to admit that Gemini and GGC executed the Security Agreement on August 15, 2022; and that DCG, GGC, and Gemini executed the Second Amendment to the Security Agreement on November 10, 2022, and refers the Court to each for a full and complete statement of their contents.

5.     GGC admits that Gemini and GGC executed the Security Agreement on August 15, 2022 and refers the Court to the Security Agreement for a full and complete statement of its contents.  GGC further admits that Gemini and GGC were parties to certain MLAs that governed the Gemini Earn Program and refer the Court to such MLAs for a full and complete statement of their contents.  GGC denies that Gemini foreclosed on the August 2022 Collateral pursuant to the terms of the Security Agreement and in accordance with the requirements of the Uniform Commercial Code.  The second sentence of paragraph 5 consists of legal conclusions to which no response is required.  To the extent a response is required, GGC denies the assertions made in the second sentence of paragraph 5, except to admit that Gemini and Genesis

were parties to the Security Agreement and certain master loan agreements, and refers the Court

to each for a full and complete statement of their contents.  GGC denies the allegations in the

third sentence of paragraph 5, except to admit that GGC has disputed the legality of the

purported foreclosure.  GGC denies the remaining allegations in paragraph 5.

6.      Paragraph 6 consists of Plaintiff's characterization of the Debtors' purported

intentions in the bankruptcy proceedings, and of legal conclusions to which no response is

required.  To the extent a response is required, GGC denies the allegations in paragraph 6.

7.      GGC denies the allegations in paragraph 7, except that GGC (i) admits that the

Second Amendment to the Security Agreement was executed on November 10, 2022, (ii)

admits that DCG transferred the Additional GBTC Shares to GGC on November 22, 2022, and

(iii) admits that GGC did not deliver these shares of GBTC to Gemini.  GGC refers the Court to

the Second Amendment to the Security Agreement for a full and complete statement of its

contents.  GGC further refers the Court to the Amended Disclosure Statement (ECF No. 839)

cited in footnote 5 of the Complaint for a full and complete statement of its contents.

8.      Paragraph 8 consists of legal arguments and of Plaintiff's characterization of the

Debtors' Plan and its alleged consequences for Earn Users, to which no response is required.

To the extent a response is required, GGC denies the allegations in paragraph 8.

9.      Paragraph 9 consists of legal conclusions and Plaintiff's arguments relating to the

Debtors' Plan, to which no response is required.  To the extent a response is required, GGC

denies the allegations in paragraph 9 and refers the Court to the October 24, 2023 Hearing

Transcript in *re Genesis Global Holdco, LLC*, Case No. 23-10063 (SHL) (Bankr. S.D.N.Y.) for

a full and complete statement of its contents.

10.      Paragraph 10 consists of legal conclusions and Plaintiff's summary of its claims, to

which no response is required.   To the extent a response is required, GGC denies the allegations in paragraph 10, including footnote 7, and refers the Court to the Complaint for a full and complete statement of its contents.

11.     Paragraph 11 consists of legal conclusions and Plaintiff's arguments, to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 11.

12.     GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 12 regarding the intent of Gemini and therefore denies such allegations.  GGC denies the remaining allegations in paragraph 12, except to admit that Gemini has asserted claims in the Complaint, and refers the Court to such Complaint for a full and complete statement of its contents.

## JURISDICTION AND VENUE

13.     Paragraph 13 contains legal conclusions to which no response is required.

14.     Paragraph 14 contains legal conclusions to which no response is required.

15.     Paragraph 15 contains legal conclusions to which no response is required.

## PARTIES

16.     GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 16, except that GGC admits that pursuant to the terms of the MLAs, Gemini acted as custodian and agent on behalf of the Earn Users, and refers the Court to the terms of the MLAs for a full and complete statement of their contents.

17.     GGC admits the allegations in paragraph 17 except insofar as footnote 8 contains characterizations of Gemini's arguments or intentions in bringing the Complaint, to which no response is required.

-5-

18.     GGC denies the allegations in paragraph 18, except to admit that Holdco is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York, and that Holdco is entirely owned by DCG.

19.     GGC denies the allegations in paragraph 19, except to admit that GAP is a private limited company organized under the laws of Singapore with its principal place of business in Singapore and that GAP is 100% owned by Holdco.

## FACTUAL ALLEGATIONS

20.     GGC denies the allegations in paragraph 20, except to admit that Holdco is 100% owned by DCG.  GAP and GGC are each 100% owned by Holdco.

21.     GGC denies the allegations in Paragraph 21, except to admit that GGC lent out assets that it borrowed from lenders.

22.     GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 22, except to admit that beginning in February 2021, GGC was a party to certain master loan agreements with Gemini and the Earn Users, and refers the Court to such master loan agreements for a full and complete statement of their contents.

23.     GGC denies the allegations in paragraph 23, except to admit that in June 2022, 3AC entered liquidation proceedings.

24.     Paragraph 24 contains legal conclusions to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 24.

25.     GGC denies the allegations in paragraph 25, except to admit that, in July and August 2022, the Debtors provided financial information to Plaintiff.

26.     GGC denies the allegations in paragraph 26, except to admit that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security

Agreement for a full and complete statement of its contents.

27.  As for paragraph 27, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, which provided for the transfer of collateral to Gemini, and refers the Court to the Security Agreement for a full and complete statement of its contents.

28.  As for paragraph 28, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security Agreement for a full and complete statement of its contents.

29.  As for paragraph 29, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security Agreement for a full and complete statement of its contents.

30.  As for paragraph 30, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security Agreement for a full and complete statement of its contents.

31.  Paragraph 31 consists of legal arguments and conclusions to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 31, except to admit that Gemini and GGC entered into the Security Agreement on August 15, 2022, and GGC entered into certain master loan agreements, and refers the Court to each for a full and complete statement of each such document's contents.

32.  Paragraph 32 consists of legal arguments and conclusions to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 32, except that GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and GGC entered into certain master loan agreements, and refers the Court to each for a full and complete statement of their contents.

-7-

33.     As for paragraph 33, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security Agreement for a full and complete statement of its contents.

34.     As for paragraph 34, GGC admits that Gemini and GGC entered into the Security Agreement on August 15, 2022, and refers the Court to the Security Agreement for a full and complete statement of its contents.

35.     GGC admits the allegation in paragraph 35.

36.     GGC admits that Gemini notified GGC about the recall of outstanding loans from the Gemini Earn Program, and refers the Court to the Notice dated October 13, 2022, for a full and complete statement of its contents.

37.     GGC denies the allegations in paragraph 37, except to admit that the termination of the Earn Program was postponed to November 22, 2022 by agreement of Gemini and GGC.

38.     GGC denies the allegations in paragraph 38, except that GGC admits that GGC and Gemini executed the First Amendment to the Security Agreement on November 7, 2022, and refers the Court to the First Amendment to the Security Agreement for a full and complete statement of its contents.

39.     GGC denies the allegations in paragraph 39, except to admit that on November 10, 2022, GGC, Gemini, and DCG entered into the Second Amendment to the Security Agreement, and refers the Court to the Second Amendment to the Security Agreement for a full and complete statement of its contents.

40.     As for paragraph 40, GGC admits that GGC, Gemini, and DCG entered into the Second Amendment to the Security Agreement on November 10, 2022, and refers the Court to the Second Amendment to the Security Agreement for a full and complete statement of its

-8-

contents.

41.     GGC denies the allegations in paragraph 41, except to admit that GGC, Gemini, and DCG entered into the Second Amendment to the Security Agreement on November 10, 2022, and refers the Court to the Second Amendment to the Security Agreement for a full and complete statement of its contents.

42.     As to the allegation in paragraph 42, GGC admits that Gemini acted as custodian and agent on behalf of Earn Users.  GGC otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 42 and therefore denies such allegations.

43.     GGC admits the allegation in the first sentence of paragraph 43.  GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegation in the second sentence of paragraph 43 and therefore denies such allegation.  The allegations in the third and fourth sentences of paragraph 43 contain legal conclusions to which no response is required and GGC refers the Court to certain master loan agreements, the Security Agreement, and the Uniform Commercial Code for a full and complete statement of their contents.  GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the fifth sentence of paragraph 43.  To the extent any further response is required, GGC denies the allegations in the third, fourth, and fifth sentences of paragraph 43.

44.     GGC admits that Niels Gjertson provided a written communication to Andrew Sullivan, Diana Kim, Jack Sutton, Ji Hun Kim and "Genesis Global Capital Legal" on November 16, 2022, and refers the Court to such communication for a full and complete statement of its contents.  GGC otherwise denies the allegations in paragraph 44.

45.     The body of paragraph 45 contains legal conclusions to which no response is

required.  To the extent a response is required, GGC denies the allegations in paragraph 45.

GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations

in footnote 10 of the Complaint.

46.    GGC denies the allegations in paragraph 46 and avers that on November 16,

2022, the Earn Users' outstanding loans to GGC totaled $895,588,964.50.

47.    GGC admits that GGC received 31,180,804 shares of GBTC from DCG to GGC

on November 22, 2022, and refers the Court to the Amended Disclosure Statement cited in

footnote 11 of the Complaint for a full and complete statement of its contents.

48.    GGC denies the allegations in paragraph 48, except to admit that there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.  GGC further avers that GGC never transferred or pledged any collateral to Gemini

pursuant to the Second Amendment to the Security Agreement.

49.    GGC denies the allegations in paragraph 49 except to admit there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.

50.    GGC denies the allegations in paragraph 50, except to admit there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.

51.    GGC denies the allegations in paragraph 51, except to admit there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.

52.    GGC denies the allegations in paragraph 52, except to admit there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.

53.    GGC denies the allegations in paragraph 53, except to admit there were

communications between Gemini and GGC between November 11, 2022 and November 17,

2022, and refers the Court to those communications for a full and complete statement of their

contents.

54.    GGC denies the allegations in paragraph 54, except admits there have been

discussions among Gemini and the Debtors and their representatives regarding issues

underlying the claims asserted in the Complaint.

55.    As to paragraph 55, GGC refers the Court to the Leto Declaration cited in footnote

12 of the Complaint for a full and complete statement of its contents.

56.    As to the allegations in the first sentence of paragraph 56, GGC admits that the

Debtors filed a term sheet and refers the Court to the Notice of Filing of the Restructuring Term

Sheet cited in footnote 13 of the Complaint for a full and complete statement of its contents.  As

to the allegation in the second sentence of paragraph 56, GGC admits that the term sheet

provided for a resolution of Earn Users' claims, and refers the Court to the term sheet for a full

and complete statement of its contents.  As to the allegation in the third sentence of paragraph

56, GGC admits that a binding agreement reflecting the Term Sheet was not executed.

57.    GGC denies the allegations in the first sentence of paragraph 57, except to admit

that the Debtors have discussed issues underlying the claims asserted in the Complaint with the Plaintiff. GGC denies the allegations in the second sentence of paragraph 57. GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 57.

58.     GGC denies the allegations of paragraph 58, except admits that the Plaintiff filed the Master Claim on May 22, 2023 and refers the Court to the Master Claim for a full and complete statement of its contents.

59.     As for paragraph 59, GGC admits that the Plaintiff filed the Master Claim on May 22, 2023 and refers the Court to the Master Claim for a full and complete statement of its contents.

60.     GGC admits that to date, neither it nor the other Debtors has filed an objection to the Master Claim. GGC further avers that the Debtors have been engaged in efforts with Gemini to reconcile the amounts asserted in the Master Claim with their books and records.

61.     GGC lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 61 and, therefore, denies such allegations.

## COUNT I

62.     Paragraph 62 contains no factual allegations to which a response is required.  To the extent a response is required, GGC repeats each answer contained in paragraphs 1 through 61.

63.     Paragraph 63 consists of a legal conclusion to which no response is required.

64.     GGC denies the allegations of paragraph 64, except admits that Plaintiff filed the Master Claim on May 22, 2023, and refers the Court to the Master Claim for a full and complete statement of its contents.

-12-

65.    Paragraph 65 purports to quote from the Bankruptcy Code and therefore no response is required.  GGC refers the Court to Section 506(a)(1) of the Bankruptcy Code for a full and complete statement of its contents.

66.    To the extent that paragraph 66 contains allegations concerning Gemini's treatment and holding of the proceeds of the alleged foreclosure on the August 2022 Collateral, GGC lacks information or knowledge sufficient to form a belief as to the truth of such allegations.  Paragraph 66 otherwise consists of legal conclusions to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 66.

67.    Paragraph 67 consists of legal conclusions to which no response is required.  To the extent a response is required, GGC denies the allegations in paragraph 67.

## **COUNT II**

68.    The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 68 is required at this time.  GGC reserves all rights to respond to paragraph 68, if necessary, following disposition of the motion.

69.    The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 69 is required at this time.  GGC reserves all rights to respond to paragraph 69, if necessary, following disposition of the motion.

70.    The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 70 is required at this time.  GGC reserves all rights to respond to paragraph 70, if necessary, following disposition of the motion.

71.    The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 71 is required at this time.  GGC reserves all rights to respond to paragraph 71, if necessary, following disposition of the motion.

72.     The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 72 is required at this time.  GGC reserves all rights to respond to paragraph 72, if necessary, following disposition of the motion.

73.     The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 73 is required at this time.  GGC reserves all rights to respond to paragraph 73, if necessary, following disposition of the motion.

74.     The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 74 is required at this time.  GGC reserves all rights to respond to paragraph 74, if necessary, following disposition of the motion.

75.     The Debtors have filed a motion to dismiss Count II; therefore, no response to paragraph 75 is required at this time.  GGC reserves all rights to respond to paragraph 75, if necessary, following disposition of the motion.

<u>**COUNT III**</u>

76.     The Debtors have filed a motion to dismiss Count III; therefore, no response to paragraph 76 is required at this time.  GGC reserves all rights to respond to paragraph 76, if necessary, following disposition of the motion.

77.     The Debtors have filed a motion to dismiss Count III; therefore, no response to paragraph 77 is required at this time.  GGC reserves all rights to respond to paragraph 77, if necessary, following disposition of the motion.

78.     The Debtors have filed a motion to dismiss Count III; therefore, no response to paragraph 78 is required at this time.  GGC reserves all rights to respond to paragraph 78, if necessary, following disposition of the motion.

79.     The Debtors have filed a motion to dismiss Count III; therefore, no response to

-14-

paragraph 79 is required at this time.  GGC reserves all rights to respond to paragraph 79, if necessary, following disposition of the motion.

## **COUNT IV**

80.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 80 is required at this time.  GGC reserves all rights to respond to paragraph 80, if necessary, following disposition of the motion.

81.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 81 is required at this time.  GGC reserves all rights to respond to paragraph 80, if necessary, following disposition of the motion.

82.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 82 is required at this time.  GGC reserves all rights to respond to paragraph 82, if necessary, following disposition of the motion.

83.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 83 is required at this time.  GGC reserves all rights to respond to paragraph 83, if necessary, following disposition of the motion.

84.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 84 is required at this time.  GGC reserves all rights to respond to paragraph 84, if necessary, following disposition of the motion.

85.     The Debtors have filed a motion to dismiss Count IV; therefore, no response to paragraph 85 is required at this time.  GGC reserves all rights to respond to paragraph 85, if necessary, following disposition of the motion.

## <u>AFFIRMATIVE DEFENSES</u>

Without admitting any of the allegations in the Complaint and without assuming the burden of proof where such burden is otherwise Gemini's, without admitting or acknowledging that it bears any burden of proof as to any of the following defenses, or that such matters are not elements of Gemini's prima facie case against GGC, GGC asserts the following additional defenses, pleaded in the alternative to the extent they may be found inconsistent, and reserves its right to amend this Answer to assert other and further defenses when and if, in the course of the its investigation, discovery, or preparation for trial, it becomes appropriate.

1.      Counts I-IV fail to state a claim upon which relief can be granted.

2.      Counts I-IV are barred, in whole or in part, by Gemini's bad faith, unclean hands, or other misconduct.

3.      Counts I-IV are barred, in whole or in part, by the doctrine of unjust enrichment, laches, waiver and/or estoppel.

4.      Counts I-IV are barred, in whole or in part, by the contracts between the Parties, and by the contractual remedies and limitations contained in the Parties' agreements.

5.      Counts I-IV are barred, in whole or in part, by the doctrine of ratification.

6.      Counts I-IV are barred, in whole or in part, because Plaintiff lacks standing to pursue some or all of the claims.

7.      GGC presently has insufficient knowledge or information upon which to form a belief as to whether there may be as yet unstated, additional defenses available to it, and therefore expressly reserves (i) the right to amend or supplement this Answer, defenses, and all other pleadings; and (ii) the right to (a) assert any and all additional defenses under any applicable federal and state law in the event that discovery indicates such defenses would be

appropriate, and (b) assert any additional cross-claims, counterclaims, and third-party claims when and if they become appropriate in this action.

## GGC'S COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, made applicable herein by Rule 7013 of the Federal Rules of Bankruptcy Procedure, GGC, by and through its undersigned counsel, asserts the following counterclaims (the "Counterclaims") against Gemini and alleges the following based upon personal knowledge derived from their investigation to date, and upon information and belief as to all other matters.

## NATURE OF COUNTERCLAIMS

1.      In the ten months since the Petition Date, the Debtors have engaged in extensive discussions with Gemini in an earnest attempt to reconcile the claims that Gemini has asserted against the Debtors and fully satisfy the claims of the Earn Users.  The most significant stumbling block in those negotiations has been, and remains, Gemini's position relating to its purported foreclosure on 30,905,782 shares of GBTC (the "August 2022 Collateral") amid market turmoil in November 2022, which GBTC shares had been pledged by GGC to secure its obligations under the parties' MLAs.  In reality, Gemini did not foreclose on the collateral.  It merely sent an email to GGC declaring that it had foreclosed by purchasing the collateral from itself.  Upon this alleged foreclosure, Gemini did not sell or rehypothecate the shares, or otherwise treat them any differently from the way they were treated before the purported foreclosure—it simply held them, and continues to hold them to this day.  Most importantly, Gemini never distributed the proceeds of its purported foreclosure to the actual beneficial Gemini Earn Users, as it would have been required to do in the event of a bona fide foreclosure.

2.        This collateral, which, at the time of the purported foreclosure, was likely worth

less than $300 million, is likely now worth more than $905[4] million.  The current value of the

collateral alone would likely satisfy more than 80% of the total claim amount asserted in these

cases by Gemini on behalf of the Earn Users.[5]  But Gemini asserts that, because it purported to

foreclose upon the shares at their much-lower value by selling those shares to itself at a value

that reflected the extreme distress affecting the crypto market at the time, it holds only $284.3

million in proceeds from the foreclosure for the benefit of the Earn Users.  However, Gemini

never distributed those proceeds to the actual Gemini Earn Users, including in the approximately

two months between the date of its alleged foreclosure and the commencement of these Chapter

11 cases, nor did it take any of the other steps, including notices and public auctions, that the

New York Uniform Commercial Code ("N.Y. UCC") requires to be performed as part of a

foreclosure of this sort.  Notably, in asserting its Master Claim against the Debtors, Gemini also

does not offset this $284.3 million against the $1,122,467,217.65, plus certain other unliquidated

amounts, that they assert—in effect, admitting that no foreclosure occurred, as any foreclosure

would have resulted in the application of proceeds to GGC's outstanding obligations in

accordance with the N.Y. UCC.

3.        Tellingly, Gemini omits from the Complaint any meaningful discussion of the fact

that the August 2022 Collateral, which they purported to foreclose upon on November 16, 2022,

had previously been due to be returned to GGC on November 15, 2022.  The Security Agreement

pursuant to which the collateral was pledged, which was executed on August 15, 2022, provided

---

[4]        As of November 21, 2023, GBTC was quoted at $29.30, but the price at which the GBTC could be sold is
not known with certainty.  Based on the quote, however, the 30,905,782 shares would be worth $905.539 million as
of that date.

[5]        Gemini filed a master proof of claim in the amount of approximately $1.12 billion on behalf of all Earn
Users.

for a short-term pledge of collateral in the context of a roiling cryptocurrency market that had

seen major crashes over the course of the summer of 2022.  On November 7, 2022, at Gemini's

behest, GGC and Gemini executed the First Amendment to the Security Agreement, which

provided that the collateral – which as of that date had been due to be returned in full to GGC

just eight days later – did not have to be returned to GGC at any point in the near future, or

indeed until the repayment in full of all of Gemini's obligations in connection with the Earn

Program.  That agreement to extend the term of the collateral posting from short-term to

indefinite was given *for zero consideration* by Gemini and at a time that Gemini itself alleges

that GGC was insolvent.  Gemini then purported to foreclose on that collateral just days later,

and seeks now to keep the upside of that "foreclosure" for itself at the expense of Earn Users.

4.      Gemini also seeks relief with respect to an additional 31,180,804 shares of GBTC

that were never pledged by GGC, and which Gemini never had in its possession or control (the

"Additional GBTC Shares").  Gemini seeks to have these shares treated as collateral under the

Security Agreement and the MLAs, but they are not, and never were, collateral.  In fact, those

shares, which were in fact transferred to GGC by DCG in connection with the Second

Amendment to the Security Agreement, remain in GGC's possession, and therefore constitute

assets of the estate for equitable distribution to all of GGC's creditors.  Gemini's requested

constructive trust would have the direct, zero-sum effect of depriving other GGC creditors of

recoveries in favor of Earn Users.  In combination with Gemini's attempt to retain the upside of

the appreciation of the 30,905,782 shares of GBTC that *were* pledged by GGC, which Gemini

has been sitting on for almost a year, Gemini seeks to benefit first itself, then the Earn Users, at

the expense of GGC's other creditors.  This would be a blatantly inequitable result.

5.      Indeed, early in this case, Gemini recognized the inequity of this very outcome, and signed on to a Restructuring Support Agreement that contemplated a contribution by Gemini of $100 million to satisfy Earn Users' claims.  For reasons unknown to the Debtors, Gemini reversed course, and now seeks to satisfy Earn Users' claims *entirely* from the value of the pledged GBTC as of the date of its alleged "foreclosure," plus additional GBTC that was never validly pledged as collateral or delivered to Gemini.

6.      The Debtors therefore vigorously oppose the relief sought by Gemini in the complaint, including (1) its request for a declaratory judgment that the proceeds of their purported foreclosure should be used to calculate the Earn Users' deficiency claim; (2) its request for a declaratory judgment that Gemini has a security interest in shares of GBTC that were never pledged by GGC, and therefore never became collateral to secure any agreement between GGC and Gemini; (3) its request for a declaratory judgment that the 31,180,804 shares of GBTC that were received by GGC from DCG and have never left GGC's possession are nonetheless *not* property of GGC's estate; and (4) its claim for a constructive trust over the shares of GBTC that were never pledged to Gemini.

7.      Indeed, and as detailed further herein, GGC hereby seeks its own relief in connection with their dispute with Gemini, specifically (1) a declaratory judgment that Gemini did not foreclose on the Collateral, (2) in the alternative to (1), a judgment that Gemini's foreclosure was improper and GGC is entitled to damages, (3) a judgment that the agreement to extend Gemini's obligation to return the Collateral indefinitely for no consideration constituted an avoidable constructive fraudulent conveyance, (4) a declaratory judgment that Gemini has no security interest in the shares of GBTC that were never transferred by GGC to Gemini, (5) a declaratory judgment that the imposition of a constructive trust over such shares for the benefit

-20-

of Gemini and the Earn Users is unwarranted, (6) in the alternative to (4), a judgment that any

pledge of such shares constituted an avoidable preferential transfer, and (7) a judgment GGC

may recover the property or value of the property transferred with respect to Counts [III and VI].

8.      A judgment by the Court that Gemini is not entitled to benefit from its efforts to

preserve for itself the value of the appreciation in GBTC shares will benefit not only the Earn

Users themselves, but indeed all of the Debtors' creditors.  Accordingly, GGC seeks the relief set

forth herein.

## **JURISDICTION AND VENUE**

9.      The United States Bankruptcy Court for the Southern District of New York has

jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference from the United States District Court for the Southern District of

New York dated January 31, 2012 (Preska, C.J.).

10.     This is a core proceeding pursuant to 28 U.S.C. § 157(b).

11.     This is an adversary proceeding brought pursuant to Rules 7001(1) and 7001(9) of

the Federal Rules of Bankruptcy Procedure.  This Court is authorized to issue declaratory relief

pursuant to 28 U.S.C. § 2201.  Pursuant to Rule 7008 of the Bankruptcy Rules, GGC consents to

the entry of final orders or a final judgment by this Court in this adversary proceeding if it is later

determined that, absent consent of the parties, the Court cannot enter final orders or judgments

consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## **PARTIES**

13.     GGC is a limited liability company organized under the laws of Delaware with its

principal place of business in Jersey City, New Jersey.  GGC is entirely owned by Holdco.

14.     Gemini is a trust company organized under the laws of New York with its principal place of business in New York, New York. Gemini operates a cryptocurrency platform that enables its users to buy, sell, and store cryptocurrencies. With respect to the transactions at issue here, Gemini acts as custodian and authorized agent on behalf of the Earn Users.

## BACKGROUND

### A.      The Gemini Earn Program

15.     Gemini Earn was an investment program offered to Gemini users who custodied their digital assets on Gemini's cryptocurrency platform (the "Gemini Earn Program"). Under the Gemini Earn Program, participants (the "Earn Users") could choose to loan the digital assets they placed with Gemini to GGC in return for a fee, with Gemini acting as custodian and agent to the Earn Users in certain respects. Certain triparty Master Loan Agreements ("MLAs") between individual Earn Users, as lenders, GGC, as the borrower, and Gemini, as custodian and authorized agent on behalf of an Earn User, in part governed this lending. Under the Gemini Earn Program and a side letter between GGC and Gemini (the "Side Letter"), GGC periodically provided Gemini with the terms of the loans it was willing to enter into as well as a maximum amount of digital assets it was willing to borrow pursuant to those terms and had an obligation to accept loans up to that maximum amount. Gemini would then provide such terms to Earn Users, who could make decisions about whether to enter into loans subject to those terms.

16.     Consistent with industry practice, many of these loans were open term loans, meaning that GGC could repay a loan in full or in part and the Earn Users could "call" (demand repayment) under the loans in whole or in part at any point in time. Upon a Earn User call under a loan, GGC would have three business days during which to pay.

17.     Neither the MLAs, the Side Letter, nor any other organizing documents of the Gemini Earn Program required GGC to post or pledge assets as collateral to secure its obligations.

**B.     The Security Agreement Between GGC and Gemini**

18.     GAP was a major lender to Singapore-based cryptocurrency hedge fund Three Arrows Capital Pte. Ltd. ("3AC").  GAP provided loans to 3AC via the extension of working capital from GGC.

19.     In August 2022, Gemini sought collateral from GGC as security for Earn Users' loans to GGC.  On August 15, 2022, GGC entered into a Security Agreement with Gemini as agent for the Earn Users pursuant to which GGC pledged the August 2022 Collateral to Gemini for the benefit of the Earn Users to secure certain of GGC's obligations under the Gemini Earn Program.  *See* Complaint, Ex. 1, Security Agreement.

20.     Section 2 of the Security Agreement provides that shares of GBTC are not pledged by GGC until transferred by GGC to Gemini:

> **Section 2. The Pledge.** As security for the prompt payment and performance in full when due (whether at stated maturity, by acceleration, or otherwise) of all liabilities and obligations of the Pledgor under the Master Loan Agreements, whether now existing or hereafter arising, whether or not mature or contingent (the "Secured Obligations"), the [GGC] hereby pledges, assigns, and grants to the [Gemini], for the benefit of [Gemini] and the [Earn Users], a security interest in all of the [GGC's] right, title, and interest in and to *all property from time to time transferred by or on behalf of [GGC] to or for the benefit of [Gemini] or the [Earn Users] in connection with this Agreement or any Master Loan Agreement, including without limitation all shares of and interests in Grayscale Bitcoin Trust credited to the GTC Account* (collectively, the "Collateral").

Complaint, Ex. 1, Security Agreement at 2 (emphasis added).

21.     Section 3(b) of the Security Agreement meanwhile provides how the proceeds of any collateral sold by Gemini after an event of default by GGC are to be distributed:

> The proceeds of any collection, sale, liquidation, or other realization of all or any part of the Collateral pursuant hereto shall be applied:

(i) <u>First</u>, to the payment of the costs and expenses of such collection, sale, or other realization, including reasonable out-of-pocket costs and expenses of [Gemini] and the reasonable fees and expenses of its agents and counsel;

(ii) <u>Next</u>, *to the payment and satisfaction in full of the Secured Obligations . . .*

Complaint, Ex. 1, Security Agreement at 2–3 (emphasis added).  Section 3(b) of the Security Agreement mirrors how such proceeds are to be distributed under the N.Y. UCC.  *See* N.Y. UCC § 9-615(a).

22.     Finally, Section 7(b) the Security Agreement required Gemini to return the August 2022 Collateral to GGC on or before November 15, 2022:

**Termination**. *Upon the earlier of (i) November 15, 2022 and (ii) the date on which all Secured Obligations shall have been paid in full, this Agreement shall automatically terminate*, and [Gemini] shall forthwith cause to be assigned, transferred and delivered, against receipt but without any recourse, warranty or representation whatsoever, any remaining Collateral and money received in respect thereof, to or on the order of [GGC], and the security interest, lien, pledge and assignment of the Collateral hereunder, together with all rights and powers of [Gemini] hereunder, shall immediately be released and deemed to be void.

Complaint, Ex. 1, Security Agreement at 5 (emphasis added).

23.     On or about August 18, 2022, GGC transferred the August 2022 Collateral to Gemini.

## C.     First Amendment to the Security Agreement

24.     In the months following the execution of the Security Agreement, GGC faced increasing financial difficulties and demands from counterparties, including Gemini. Specifically, following extensive back and forth, on October 13, 2022, Gemini provided GGC 30 days' notice of its intention to terminate the Gemini Earn Program.

25.     Following further negotiations between GGC and Gemini, on November 7, 2022, GGC and Gemini entered into an amendment to the security agreement, which extended its term

-24-

until GGC paid what it owed under the Gemini Earn Program in full (the "First Amendment to
the Security Agreement").

26.     In relevant part, the termination provision of the Security Agreement was
amended as follows:

> **Termination**. *Upon the date on which all Secured Obligations shall have been paid in full and the Master Loan Agreements are terminated in accordance with their terms, this Agreement shall automatically terminate*, and [Gemini] shall forthwith cause to be assigned, transferred and delivered, against receipt but without any recourse, warranty or representation whatsoever, any remaining Collateral and money received in respect thereof, to or on the order of [GGC], and the security interest, lien, pledge and assignment of the Collateral hereunder, together with all rights and powers of [Gemini] hereunder, shall immediately be released and deemed to be void.

Complaint, Ex. 3, First Amendment to the Security Agreement at 1 (emphasis added).

27.     The First Amendment to the Security Agreement did not alter any other relevant
portions of the Security Agreement.

28.     No consideration was provided to GGC in exchange for eliminating Gemini's
obligation to return the collateral to GGC on November 15, 2022.

29.     GGC was insolvent at the time of its entry into the First Amendment to the
Security Agreement.  Gemini also concedes GGC was "massively insolvent" at this time.
Complaint at ¶ 24.

**D.      Second Amendment to the Security Agreement**

30.     Following the First Amendment to the Security Agreement, Gemini also
requested that GGC pledge additional collateral to further secure certain of GGC's obligations
under the Gemini Earn Program.

31.     On November 10, 2022, GGC, Genesis, and DCG entered into a Second
Amendment to the Security Agreement pursuant to which DCG agreed to deliver 31,180,804
shares of GBTC (the "Additional GBTC Shares") to GGC, which agreed to pledge such shares to

Gemini for the benefit of Earn Users to secure certain of GGC's obligations under the Gemini

Earn Program (the "Second Amendment to the Security Agreement"):

> **Amendment to the Collateral Amount**. . . . As promptly as practicable after the
> execution of this Second Amendment, the Parent shall assign, sell, convey, transfer, and
> deliver to the Pledgor, or a controlled subsidiary of the Pledgor, all right, title and interest
> in and to **31,180,804** shares of Grayscale Bitcoin Trust, free and clear of all liens, claims,
> charges and encumbrances. As promptly as practicable after such assignment,
> conveyance, transfer, and delivery, the Pledgor shall transfer or cause to be transferred
> such **31,180,804** shares of Grayscale Bitcoin Trust to the GTC Account.

Complaint, Ex. 4, Second Amendment to the Security Agreement at 1–2 (emphasis in original).

32.     The Second Amendment to the Security Agreement did not alter Section 2 of the

Security Agreement, which provides that that a pledge of collateral shall take place upon the

transfer of assets by GGC to the GTC Account, or any other relevant portions of the Security

Agreement. *See supra* ¶ 20.

33.     No consideration was provided to GGC in exchange for the Second Amendment

to the Security Agreement. *See* Complaint, Ex. 4, Second Amendment to the Security

Agreement. Nor was any other new value exchanged in connection with the Second Amendment

to the Security Agreement. The Second Amendment to the Security Agreement only related to

GGC's existing antecedent debt.

34.     GGC was insolvent at the time of its entry into the Second Amendment to the

Security Agreement.

35.     On November 22, 2022, DCG delivered the Additional GBTC Shares to GCC.

36.     GGC did not transfer the Additional GBTC Shares. GGC maintained the

Additional GBTC Shares with its transfer agent, Continental Stock Transfer & Trust Company

("Continental"). The Additional GBTC Shares were commingled with GGC's other GBTC

holdings at Continental such that the Additional GBTC Shares are not identifiable.

-26-

**E.      Purported Foreclosure of the August 2022 Collateral**

37.      On November 16, 2022, GGC suspended withdrawals under the Gemini Earn Program.

38.      That same day, the General Counsel of Gemini informed GGC via e-mail that it had foreclosed on the August 2022 Collateral through "a private sale to us in accordance with Section 9-610 of the Uniform Commercial Code at the market price of $9.20 per share as of 4:00 PM EST for total proceeds of $284,333,194.40" and stated that "[s]uch amount, less the cost and expenses of foreclosure, will be applied as set forth in Section 3(b) of the Security Agreement to the Secured Obligations."

39.      Gemini claims to have priced this private sale by reference to the then-OTCQX closing market price of $9.20 per share.

40.      Gemini has not distributed the proceeds of this purported foreclosure to Earn Users, as required by Section 3(b)(ii) of the Security Agreement.

41.      Instead, Gemini has simply continued to hold the August 2022 Collateral, just as it held such collateral prior to its purported foreclosure.

**F.      Events Following Gemini's Purported Foreclosure**

42.      Since November 2022, Gemini and the Debtors have been in ongoing discussions regarding potential out-of-court or in-court restructurings of the Debtors' liabilities to Earn Users.

43.      On May 22, 2023, Gemini filed the Master Claim for $1,122,467,217.65, plus certain other unliquidated amounts, asserting that it has secured party and/or setoff rights with respect to, among other things, the proceeds of foreclosure of the August 2022 Collateral and the value of the Additional GBTC Shares.  The amount Gemini asserts in its Master Claim is not offset by the proceeds of its alleged foreclosure.

## <u>COUNTERCLAIM I</u>

**Declaratory Judgment – 28 U.S.C. § 2201**
**Gemini Did Not Foreclose on the August 2022 Collateral**

44.    GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45.    This matter constitutes an actual case in controversy between GGC and Gemini.

46.    This Court should declare that, under applicable law, including the N.Y. UCC, Gemini did not foreclose on the August 2022 Collateral.

47.    Under the N.Y. UCC, following a debtor's default, a foreclosure takes place when a secured party sells, leases, licenses, or "otherwise disposes" of collateral in a "commercially reasonable" manner.  N.Y. UCC §§ 9-610, 9-611.  Gemini alleges, and GGC does not dispute, that GGC defaulted under the MLAs and the Security Agreement, but Gemini never disposed of the collateral under the N.Y. UCC.  Gemini's purported "disposition" of the August 2022 Collateral was a purported sale to itself, which under these circumstances does not meet the requirement under the N.Y. UCC for a disposition of collateral.  N.Y. UCC § 9-610(a);  *see also* N.Y. § UCC 9-619(c) (stating that "[a] transfer of the record or legal title to collateral to a secured party . . . is not of itself a disposition of collateral under this article and does not of itself relieve the secured party of its duties under this article.").

48.    Moreover, no further disposition took place after Gemini's purported sale of the August 2022 Collateral to itself.  Gemini has not distributed the proceeds of its purported foreclosure to Earn Users.  Complaint ¶ 66.  Instead, Gemini held and continues to hold the proceeds of the August 2022 Collateral.  *Id.*

49.    Because Gemini's sale of the August 2022 Collateral to itself was not a disposition, and because proceeds of the August 2022 Collateral have not been distributed to

Earn Users, there was no disposition of the collateral under the N.Y. UCC, and no foreclosure therefore occurred.

50.     Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, GGC is entitled to a judgment declaring that Gemini did not foreclose on the August 2022 Collateral.

## COUNTERCLAIM II

### Improper Foreclosure – NY UCC § 9-625

51.     GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52.     In the alternative to Counterclaim I, in the event this Court determines that Gemini foreclosed on the August 2022 Collateral, this Court should order that Gemini's foreclosure was improper and that GGC is entitled to damages under Section 9-625 of the N.Y. UCC.

53.     Gemini's purported foreclosure, if it occurred at all, was improper for two independent reasons.

54.     First, any disposition of collateral must be "commercially reasonable," and a private disposition to oneself or to the secured party is only commercially reasonable "if the collateral [subject to the disposition] is of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations."  N.Y. UCC § 9-610(a)-(b).

55.     Gemini's purported foreclosure of the August 2022 Collateral was not commercially reasonable because it was (purportedly) completed in a private sale, despite the fact that GBTC is not collateral "of a kind that is customarily sold on a recognized market or the subject of widely distributed standard price quotations."  *Id.*  GBTC Shares are not traded on the New York Stock Exchange, NASDAQ, or any alternative trading system that facilitates distribution of price quotations.  *See* N.Y. UCC § 9-610, Comment 9 (describing recognized

-29-

markets as markets "in which the items sold are fungible and prices are not subject to individual

negotiation"). Rather they are traded on OTCQX, where prices are subject to individual

negotiation. Therefore, OTCQX is not a recognized market and GBTC shares are not the subject

of widely distributed standard price quotations.

56. Second, a foreclosing party must provide a debtor timely written notice of a

foreclosure unless the collateral is "of a type customarily sold on a recognized market." N.Y.

UCC § 9-611(d). Gemini never provided GGC timely written notice of its purported

foreclosure—it only informed GGC of its (purported) private sale after the fact. Further, the

"recognized market" exception is inapplicable here because GBTC is sold on OTCQX, which, as

described above, is not a recognized market. *Id.*

57. Because GBTC shares are not of a type customarily sold on a recognized market

and are not the subject of widely distributed standard price quotations, and because Gemini also

did not provide timely written notice of its intent to foreclose prior to the date of its purported

foreclosure (which it would have been required to do in the event of any foreclosure, because

GBTC is not of a type commonly sold on a recognized market), the purported foreclosure on the

August 2022 Collateral could not have been conducted in accordance with Sections 9-610 and 9-

611 of the N.Y. UCC. That is, Gemini's purported foreclosure was not commercially reasonable

and GGC was not provided proper written notice.

58. Accordingly, if the Court does not grant the relief requested by Counterclaim I

above, GGC is entitled to a judgment declaring that Gemini did not properly foreclose on the

August 2022 Collateral in accordance with applicable law, and that GGC is entitled to damages

under N.Y. UCC § 9-625.

-30-

**COUNTERCLAIM III**

**Constructive Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B)**

59.     GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60.     GGC transferred the August 2022 Collateral to Gemini as described herein. Under the Security Agreement, the August 2022 Collateral was due to be returned to GGC on or before November 15, 2022.  Pursuant to the First Amendment to the Security Agreement, GGC and the Debtors agreed to extend the return date of the August 2022 Collateral indefinitely and eliminated Gemini's obligation to return the August 2022 Collateral on November 15, 2022 regardless of whether there remained obligations owed by GGC.  No consideration was given to GGC in exchange for this agreement.

61.     GGC was insolvent on the date of the First Amendment to the Security Agreement.

62.     Accordingly, the First Amendment to the Security Agreement should be avoided as constructively fraudulent pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

**COUNTERCLAIM IV**

**Declaratory Judgment – 28 U.S.C. § 2201**
**Gemini Does Not Have a Security Interest in the Additional GBTC Shares**

63.     GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     This matter constitutes an actual case in controversy between GGC and Gemini.

65.     This Court should declare that, pursuant to the Security Agreement, Gemini does not hold a valid security interest in the Additional GBTC Shares.

66.     The Second Amendment to the Security Agreement requires DCG to transfer the

Additional GBTC Shares to GGC, and requires GGC, upon receipt, to transfer the Additional

GBTC Shares to the GTC Account (*i.e.*, the account in which the Earn Program collateral was

held).  The Security Agreement provides that a pledge of collateral shall take place upon the

transfer of assets by GGC to the GTC Account.  As such, because the Additional GBTC Shares

were never transferred to the GTC Account, they were never pledged as collateral under the

Security Agreement, and Gemini therefore has no security interest in the Additional GBTC

Shares.

67.     Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, GGC

is entitled to a judgment declaring that Gemini does not hold a valid security interest in the

Additional GBTC Shares.

## COUNTERCLAIM V

### Declaratory Judgment – 28 U.S.C. § 2201
**The Imposition of a Constructive Trust Over the Additional GBTC Shares is Unwarranted**

68.     GGC repeats and incorporates by reference each and every allegation contained in

the preceding paragraphs as if fully set forth herein.

69.     This matter constitutes an actual case in controversy between GGC and Gemini.

70.     This Court should declare that the imposition of a constructive trust over the

Additional Collateral for the benefit of Gemini and for the benefit of Earn Users is unwarranted.

71.     The relationship among GGC on one end and Gemini and the Earn Users on the

other does not constitute a confidential and/or fiduciary relationship.

72.     In addition, GGC was not unjustly enriched by its retention of the Additional

GBTC Shares.

-32-

73.     Moreover, Gemini's claim for a constructive trust is barred by the existence of the MLAs and the Second Amendment to the Security Agreement.

74.     Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the GGC is entitled to a judgment declaring that the imposition of a constructive trust over the Additional Collateral for the benefit of Gemini and for the benefit of Earn Users is unwarranted as a matter of equity.

## COUNTERCLAIM VI

### Preferential Transfer – 11 U.S.C. § 547(b)

75.     GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.     In the alternative to Counterclaim IV, in the event this Court decides that Gemini does hold a valid security interest in the Additional GBTC Shares, such transfer is avoidable as a preferential transfer under Section 547(b) of the Bankruptcy Code.

77.     Gemini either (i) was a creditor of GGC with respect to any such transfer of Additional GBTC Shares (within the meaning of 11 U.S.C. § 101(10)), or (ii) was the recipient of such transfer for the benefit of a creditor or creditors of Gemini.

78.     Any pledge of the Additional GBTC Shares must have taken place after GGC's receipt of the Additional GBTC Shares on November 10, 2022, which was during the ninety-day period prior to commencement of the Chapter 11 Cases (the "Preference Period").

79.     Any transfer of the Additional GBTC Shares would have been made while GGC was insolvent.  GGC is entitled to the presumption of insolvency for each transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

80.     Any transfer of the Additional GBTC Shares would have been made on account of, and in relation to, antecedent debts owed by GGC to Gemini and/or the Earn Users.

-33-

81.    Any transfer of the Additional GBTC Shares would have been made to or for the benefit of Gemini and/or the Earn Users.

82.    Any transfer of the Additional GBTC Shares would have enabled Gemini and/or the Earn Users to receive more than they would receive in a liquidation.

83.    Pursuant to 11 U.S.C. § 547(b), GGC has undertaken reasonable due diligence under the circumstances of the case and has taken into account known or reasonably knowable affirmative defenses and believes that any transfer of the Additional GBTC Shares is avoidable.

84.    Accordingly, if the Court does not grant the relief requested by Counterclaim IV above, the Court should find that, in the alternative, any transfer of the Additional GBTC Shares is avoidable as a preferential transfer under Section 547(b) of the Bankruptcy Code.

## COUNTERCLAIM VII

### Recovery of the August 2022 Collateral and the Additional GBTC Shares – 11 U.S.C. § 550

85.    GGC repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86.    GGC is entitled to avoid (i) the First Amendment to the Security Agreement pursuant to 11 U.S.C. § 548 and (ii), in the event this Court does not grant the relief requested by Counterclaim IV, the transfer of the Additional GBTC Shares pursuant to 11 U.S.C. § 547(b).

87.    Gemini was the initial transferee with respect to (i) the August 2022 Collateral and (ii), if the Court does not grant the relief requested by Counterclaim IV, the Additional GBTC Shares.

88.    Pursuant to 11 U.S.C.§ 550(a), GGC is entitled to recover from Gemini (i) the August 2022 Collateral and (ii), if the Court does not grant the relief requested by Counterclaim III, the Additional GBTC Shares, plus interest thereon to the date of payment and the costs of this action.

-34-

### PRAYER FOR RELIEF

**WHEREFORE**, GGC respectfully requests that this Court enter judgment in its favor and requests relief as follows:

89.     A judgment declaring that, pursuant to the N.Y. UCC, Gemini did not foreclose on the August 2022 Collateral, or, should the Court decide Gemini did foreclose on the August 2022 Collateral, a judgment declaring that Gemini's foreclosure was improper and GGC is entitled to damages under N.Y. UCC § 9-625;

90.     An order that the First Amendment to the Security Agreement is avoidable as a fraudulent transfer pursuant under 11 U.S.C. § 548, and that GGC is entitled to recover the August 2022 Collateral under 11 U.S.C. § 550;

91.     A judgment declaring that Gemini does not have a security interest in the Additional GBTC Shares, or, should the Court decide Gemini does hold such a security interest, an order that any transfer of the Additional GBTC Shares to or for the benefit of Gemini is an avoidable preferential transfer under 11 U.S.C. § 547, and that GGC is entitled to recover such transfer under 11 U.S.C. § 550;

92.     A judgment declaring that the imposition of a constructive trust over the Additional GBTC Shares is unwarranted.

93.     All other relief, at law or equity, to which GGC may be entitled, or that this Court may deem just and proper.

Dated:     November 21, 2023          /s/ Luke A. Barefoot
           New York, New York         Sean A. O'Neal
                                      Luke A. Barefoot
                                      Jane VanLare
                                      Andrew Weaver
                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                      One Liberty Plaza
                                      New York, New York 10006
                                      Telephone: (212) 225-2000
                                      Facsimile: (212) 225-3999

                                      *Counsel to the Defendants*